UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KEITH BAXTER,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:10-cv-05062-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 4, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On March 3, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of June 30, 1998, which was denied upon initial administrative review on April 24, 2003. See Tr. 18, 64, 153. It appears no further appeal of that denial was taken. On December 22, 2005, plaintiff filed another application for disability insurance benefits, once more alleging disability as of June 30, 1998, due to a lower back injury/sprain to the lumbar region, as well as

REPORT AND RECOMMENDATION - 1

migraine headaches. See Tr. 18, 128, 144, 156. That second application was denied upon initial review and on reconsideration. See Tr. 18, 82, 86. A hearing was held before an administrative law judge ("ALJ") on March 10, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 27-61.

On April 7, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 18-26. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 8, 2009, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981. On February 1, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See (ECF #1-#3). The administrative record was filed with the Court on April 26, 2010. See (ECF #12). The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, or further administrative proceedings. Specifically, plaintiff argues that the ALJ *de facto* re-opened the April 24, 2003 initial denial and erred: (1) in failing to treat plaintiff's job as a security guard as a trial work period; (2) in evaluating the medical evidence in the record; (3) in assessing plaintiff's credibility; and (4) in finding him to be capable both of performing his past relevant work and other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and thus recommends that defendant's decision be affirmed. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

REPORT AND RECOMMENDATION - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ Did Not *De Facto* Re-Open Plaintiff's Prior Application

Defendant may apply administrative *res judicata* "to bar reconsideration of a period with respect to which [he] has already made a determination, by declining to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996). Defendant's refusal to reopen a decision regarding an earlier period in general is "not subject to judicial review." Id. This is because, once an administrative decision becomes final, defendant's decision to re-open a disability claim is "purely discretionary." Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985). Further, since a discretionary decision is not a "final decision" within the meaning of 42 U.S.C. § 405(g),[1] defendant's refusal to reopen that decision "is not a 'final' decision subject to judicial review." Id. (citations omitted).

Although the doctrine of *res judicata* "should not be rigidly applied in administrative

---

[1] Section 405(g) reads in relevant part: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); see also Udd v. Massanari, 245 F.3d 1096, 1098 (9th Cir. 2001) (judicial review limited to final decision made after hearing).

REPORT AND RECOMMENDATION - 3

proceedings," and should not be "applied so as to 'contravene an overriding public policy or result in manifest injustice,'" it is only "[w]here the record is patently inadequate to support the findings the ALJ made," that its application is "tantamount to a denial of due process." Lester, 81 F.3d at 827 (9th Cir. 1996); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (*res judicata* applied less rigidly to administrative proceedings than to judicial proceedings); Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985) (quoting Thompson v. Schweiker, 665 F.2d 936, 940-41 (9th Cir. 1982)).

One exception to the application of this doctrine is where defendant "considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." Lester, 81 F.3d at 827; see also Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001). If such a *de facto* re-opening does occur, then defendant's "decision as to the prior period is subject to judicial review." Lester, 81 F.3d at 827. "[W]here the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds," though, "the decision should not be interpreted as re-opening the claim and is therefore not reviewable." Krumpelman, 767 F.2d at 589 (citing McGowen v. Harris, 666 F.2d 60, 68 (4th Cir. 1981)).

In regard to plaintiff's first application for disability benefits, which, as noted above, was denied upon initial review and not appealed further, the ALJ found in relevant part:

> . . . I do not find that there is new and material evidence which supports a reopening of the prior application. The determination of the commissioner in that prior file seems well reasoned and continues to be supported by the medical evidence of record. I will refer to the earlier medical record and the prior State Agency evaluation in this case as I believe that they support my decision about the claimant's later functioning, <u>but my referring to this evidence is not intended to reopen the prior application</u>.

Tr. 18 (emphasis added). In light of the Ninth Circuit's holding in Krumpelman, the undersigned finds the ALJ's decision should not be interpreted as a *de facto* re-opening of plaintiff's previous

REPORT AND RECOMMENDATION - 4

application, given that the ALJ made clear here his contrary intention.

Plaintiff argues a *de facto* re-opening did occur in this case, because the ALJ then went on to "explicitly" indicate he was not under a disability at any time during the period from his alleged onset date of June 30, 1998, though his date last insured of March 31, 2005, given that there was no need to determine whether he was disabled for the period prior to the date his first application was denied upon initial review. (ECF #15, p. 13). But, again, the language the ALJ employed here was clear. That is, any reference he was making to the record during that period was solely for the purpose of supporting his current decision. Nor was the ALJ's reference to the June 30, 1998 alleged onset date dispositive as to the ALJ's intent, in light of the fact that this is the actual date alleged in the most recent application. Indeed, as noted below in the context of explaining why plaintiff's past work as a security guard was substantial gainful activity, the ALJ expressly concluded that "[t]herefore, the period at issue for determination of disability in this case is the short window of time between January 23, 2005[, the date on which plaintiff stopped working at that job,] and March 31, 2005, [his] date last insured." Tr. 21.

Nor does the undersigned find, as required by Lester and as recognized by the Eleventh Circuit, that the ALJ "actually reexamined" the merits of plaintiff's prior application. Hall v. Bowen, 840 F.2d 777, 778 (11th Cir. 1987); see also Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996); Passopulos v. Sullivan, 976 F.2d 642, 645 (11th Cir. 1992); Cherry v. Heckler, 760 F.2d 1186, 1189 (11th Cir. 1985). In determining whether such a re-examination has occurred here, the Court should keep in mind that defendant "must be allowed some leeway to evaluate the proffered evidence to determine whether to reopen the case." Hall, 840 F.2d at 778; see also Wolfe, 86 F.3d at 1078; Passopulos, 976 F.2d at 646, Cherry, 760 F.2d at 1189. Thus, "an ALJ does not reopen a prior final decision when the ALJ evaluates evidence presented in support of

REPORT AND RECOMMENDATION - 5

the original application solely to make a reasoned determination of its *res judicata* effect on the second application." Passopulos, 976 F.2d at 646; see also Wolfe, 86 F.3d at 1079.

As noted by the Fourth Circuit:

> [W]hen a social security claimant presents any claim that is arguably the same one earlier denied on the merits, [defendant] must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter.

McGowen v. Harris, 666 F.2d 60, 67 (4th Cir. 1981); see also Cherry, 760 F.2d at 1189 (noting ALJ in that case did precisely this, reviewing all evidence, including that presented in support of original claim, and reasoning that there was insufficient new and material evidence to justify re-opening under relevant regulations). On the other hand, a prior decision is "deemed reopened if the ALJ does not apply *res judicata*," but "bases an ultimate determination on a review of the record in the prior application." Passopulos, 976 F.2d at 646 (emphasis added); see also Wolfe, 86 F.3d at 1079; Malave v. Sullivan, 777 F.Supp. 247, 252 (S.D.N.Y. 1991) (it is only where defendant does not accord preclusive effect to earlier decision, and instead considers all evidence and renders decision on merits, that prior application is deemed to be re-opened).

As such, this is not at all the kind of situation such as that faced by the Fourth Circuit in Coup v. Heckler, 834 F.2d 313, 317-18 (3rd Cir. 1987), *abrogated on other grounds*, Gisbrecht v. Barnhart, 535 U.S. 789 (2002), where the Court of Appeals, in recognizing that *de facto* re-opening had occurred, noted in relevant part that:

> . . . At no point in the administrative proceeding . . . did the agency rely on administrative res judicata, or state that it was not considering [the claimant's] claim of disability prior to a particular date. Thus this is not a case where the agency explicitly considered such earlier evidence solely for the purpose of determining whether the claimant was disabled [in regard to] the most recent application. . . .

834 F.2d at 317-18. In other words, "it is clear" that in this case the ALJ evaluated the evidence

REPORT AND RECOMMENDATION - 6

in the record solely for the purpose of determining plaintiff's disability with respect to his most recent application for disability benefits "without actually reconsidering the merits of" plaintiff's prior application. Hall, 840 F.2d at 778 (emphasis added).

II.   The ALJ Properly Addressed Plaintiff's Past Work as a Security Guard

In regard to plaintiff's past work as a security guard, the ALJ found in relevant part:

> The claimant alleges that he has been disabled since 1998, but the claimant went to work at Baldwin Security and worked as a security guard from July 6, 2004 until January 23, 2005. The claimant reports that he left this job when his employer asked him to take work at another work cite [sic], but he did not think his back would tolerate the new work environment (Exhibit 8F, p.2). The claimant's attorney acknowledges that this work activity was too long to be considered an unsuccessful work attempt, but asks that it be considered a trial work period. 20 CFR 404.1592(e) indicates that a trial work period cannot begin before the month in which you file your application for benefits. The claimant filed his current application for benefits on December 22, 2005, and his requested trial work period ended on January 23, 2005. Since the claimant's requested trial work period is before the date of his application, the work activity cannot be considered a trial work period. Therefore, I find that the claimant was engaging in substantial gainful activity until January 23, 2005. Therefore, the period at issue for determination of disability in this case is the short window of time between January 23, 2005 and March 31, 2005, the claimant's date last insured.

Tr. 20. Plaintiff argues that if the Court finds the ALJ did *de facto* re-open his prior application, then it also must find the ALJ erred by: (1) failing to treat his past work as a security guard as a trial work period; and (2) finding he was not disabled prior to January 23, 2005, due to his work being substantial gainful activity. But because, as explained above, the ALJ did not *de facto* re-open plaintiff's first application for disability insurance benefits, the ALJ did not err in finding his past work as a security guard to be substantial gainful activity for the period up until January 23, 2005, and therefore properly did not treat it as a trial work period.

III.   The ALJ Did Not Err in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

REPORT AND RECOMMENDATION - 7

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield

REPORT AND RECOMMENDATION - 8

v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the ALJ erred by ignoring the August 19, 1999 opinion of James Damon, M.D., and Edward Hoffman, M.D., two consultative, examining physicians, that "[h]e should be able to change positions frequently from sitting to standing and vice versa." Tr. 371.  In addition, plaintiff argues the ALJ erred as well in ignoring the January 15, 2001 opinion of Jerome P. Zechmann, M.D., his back surgeon, that he head "for a line of work that allows him to stand, sit, walk as needed with minimal sitting." Tr. 379.  But, given that the ALJ did not *de facto* re-open plaintiff's prior application, and did not err in finding plaintiff's past work as a security guard constituted substantial gainful activity until January 23, 2005, he did not have to adopt these limitations, as they were assessed well before the relevant period at issue here – i.e., January 23, 2005, through March 31, 2005 – and there is no indication the above physicians were assessing plaintiff's functional capability for any period other than the current one they were considering at the time.  As such, there was no error here.

REPORT AND RECOMMENDATION - 9

IV.  The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. See Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility for the following reasons:

> The record in this case is fairly consistent.  The evidence shows that the claimant was able to perform full time work for six months prior to his date

REPORT AND RECOMMENDATION - 10

> last insured and he only left the work when aspects of the job changed so that he felt that he could not do the job the way he was being asked. There is no medical evidence during the period at issue. The claimant reports that he could not afford to seek treatment, but his wife was working during the period at issue and it seems they may have managed some medical care. The record suggests that he was engaging in some leisure activities such as fishing, and he completed a year of computer training. While his wife and mother in law suggest that his activities have decreased, the claimant testified that his condition remains much the same as it was in 1998, so there may be no physical reason that his activities have decreased. The claimant still drives a motorcycle, although he does it for 30 miles or less. He was able to fly out and visit his brother despite the fact that the prolonged sitting aggravated his back pain. I note that the claimant was able to afford a plane trip to visit his brother, but he has not been able to afford any medical care according to his testimony.
>
> The Department of Labor and Industries, the State Agency, and the claimant's treating doctor have all indicated that the claimant can lift at least 20 pounds and stand or walk six hours in an eight hour day. This is consistent with light work . . .
>
> The claimant's reported headaches and need to lie down after exacerbating his pain are not documented in the medical record and I do not find that he has any need to lie down during a workday or workweek.

Tr. 24.

Plaintiff argues the ALJ erred here in discounting his testimony concerning his need to lie down, pointing out there is documentation in the record that he reported to two of his physicians of his need in this area. See Tr. 385, 405. The ALJ, however, is actually correct in the sense that there is no objective medical documentation of such a need in the record. In this sense then, the ALJ did not err in discounting plaintiff's credibility on this basis, or on the basis, as the ALJ also noted, that the substantial objective medical evidence in the record supports a finding that he can perform work essentially at the light exertional level. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement). Even if the ALJ did err as plaintiff asserts, furthermore, other valid reasons were provided as well.

REPORT AND RECOMMENDATION - 11

As just noted, the ALJ properly found plaintiff's subjective complaints were inconsistent with the objective medical evidence in the record overall. In addition, also as noted above, the ALJ found plaintiff had performed substantial gainful activity for much of the alleged period of disability in this case, which clearly calls into question plaintiff's credibility regarding his claim of total inability to work. Other inconsistencies in the record noted by the ALJ, such as his claim that he could not afford treatment despite his wife working, their ability to managed at least some medical care, and his ability to afford a plane trip, further call into question his veracity. Lastly, even if, as discussed above, the ALJ did provide one improper reason for discounting plaintiff's credibility in this case regarding his need to lie down, this does not render the ALJ's credibility determination invalid, since it is supported by substantial evidence in the record overall for all of the other above reasons. Tonapetyan, 242 F.3d at 1148.

V.  Any Error by the ALJ in Finding Plaintiff to Be Capable of Performing His Past Relevant Work Was Harmless

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process,"[2] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability

---

[2] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 12

to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity to perform light work, with the additional non-exertional limitations that he could only occasionally use stairs, balance, stoop, crouch and crawl, and that he could not use ladders, ropes or scaffolds. See Tr. 23. At step four of the sequential disability evaluation process, the ALJ determined plaintiff to be capable of performing his past relevant work as a security guard, specifically finding further in relevant part that:

> The claimant was engaging in substantial gainful activity working as a security guard until two and a half months prior to his date last insured. There is no medical evidence to indicate that his condition changed after that work and before his date last insured. The claimant has stated that he left the work because the work changed, not because he was unable to perform the work as he had been doing it.
>
> I find that the claimant is able to perform his past work as a security guard. I note the vocational expert's testimony that the job he performed is no longer performed the way he did it and that there is some additional training required of security guards now that the claimant does not have. Therefore, I will continue with the fifth step of the sequential evaluation process.

Tr. 24-25. Plaintiff argues the ALJ erred in finding him capable of performing his past relevant work as a security guard, because he failed to make any specific findings as to the physical and mental demands of that work. See SSR 82-62, 1982 WL 31386 *4. The undersigned agrees that it does not appear the ALJ made any such findings, although he did reference the security guard job as plaintiff had performed it. Any such err in this regard, however was harmless. This is because the ALJ also acknowledged the job of security guard as it is now generally performed,

REPORT AND RECOMMENDATION - 13

requires additional training plaintiff does not have, and continued on to step five of the sequential disability evaluation process to determine if he could perform other jobs existing in significant numbers in the national economy. Accordingly, any error here was harmless, as it had no effect on the ALJ's ultimate non-disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless if it is non-prejudicial to claimant or irrelevant to ultimate disability conclusion).

VI.     The ALJ's Step Five Determination Was Proper

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines. See Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony thus must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). As such, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, though, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

REPORT AND RECOMMENDATION - 14

functional capacity. See Tr. 53-54.  In response thereto, the vocational expert testified that there were other jobs an individual with those limitations could perform. See Tr. 54-56.  Based on the vocational expert's testimony, as well as plaintiff's age, education, work experience, and residual functional capacity, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 25-26.

Plaintiff argues that based on the vocational expert's additional testimony at the hearing that an individual who needed to walk around at will could not perform the jobs identified by the vocational expert, because those jobs were performed at a work station, he should be found to be disabled at step five. See Tr. 58.  As discussed above, though, the ALJ was not required to adopt the limitations found by some of the medical sources in the record regarding having to stand, sit or walk as needed or to change positions between standing and sitting.  As such, the ALJ did not err in failing to include those limitations in the hypothetical question he posed to the vocational expert.  The ALJ, therefore, also did not err in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, and therefore in determining him to be not disabled, here at step five.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 15

is directed set this matter for consideration on **February 4, 2011**, as noted in the caption.

DATED this 18th day of January, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16